**Affirmed and Opinion Filed February 4, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-13-01543-CR
_____

### MIGUEL ANTONIO RODRIGUEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

_____

### On Appeal from the 416th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 416-82782-2012

_____

## MEMORANDUM OPINION
Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Bridges

A jury convicted appellant Miguel Antonio Rodriguez of two counts of aggravated sexual assault of a child under Texas Penal Code section 22.021(a)(1)(B)(i) (penetrating the female sexual organ and anus with the male sexual organ).[1] The trial court sentenced Rodriguez to thirty years' confinement on each count to run concurrently. On appeal, Rodriguez raises two issues: (1) the evidence is insufficient to support his convictions, and (2) defense counsel was ineffective because he waited until the punishment phase to introduce evidence of motive for the victim's mother to lie. We affirm the trial court's judgment.

---

[1] The indictment included a third count; however, the trial court granted a directed verdict on the third count.

## Background

Rodriguez and Patricia Nunez were involved in a dating relationship and lived together in the same apartment with their son and five-year-old E.N., the complainant. Nunez was E.N.'s mother, but Rodriguez was not her father. On June 8, 2011 officers arrested Rodriguez for assaulting Patricia. He pleaded guilty and went to jail for the offense.[2]

In August of 2011, approximately two months after Rodriguez no longer lived with the family, E.N. was watching a movie with Nunez. When two actors began kissing, E.N. told Nunez that Rodriguez "did that to me." Nunez as surprised when E.N. told her Rodriguez "put his part in her part." E.N. told Nunez that Rodriguez's part was ugly, and it hurt when he put it in her "colita." Nunez testified "colita" is the Spanish word for "front private part." E.N. indicated Rodriguez's part was his penis.

Nunez encouraged E.N. to tell her everything that happened. Nunez testified that throughout the next several days, E.N. would suddenly remember things and tell her little by little what happened. E.N. said Rodriguez acted inappropriately two times in the bathroom and another time in the bedroom when he built a fort. Nunez said E.N. described laying down inside the fort and Rodriguez laying on top of her. E.N. later demonstrated the position with her dolls. Nunez testified E.N. put a Barbie doll on bottom and put one of her brother's dolls on top.

E.N. also described Rodriguez "put[ting] his part in [E.N.'s] rear end." Nunez explained that one day when she returned from work, E.N. told her she could not stand up because her bottom hurt. Rodriguez denied doing anything to E.N., and E.N. did not tell Nunez about the incident at that time.

---

[2] The jury did not hear this evidence, but the trial court considered it during punishment, along with another assault against Nunez in July of 2009.

E.N. told Nunez that one time "something white had come out," of Rodriguez's penis, and he used a red t-shirt to clean himself off. Nunez admitted to later throwing the shirt away instead of giving it to the police for evidence.

On August 30, 2011, Nunez took E.N. to the emergency room for an unrelated illness. During this trip, Nunez had the courage to tell an emergency room nurse about the abuse. Hospital personnel then called the police.

Officer Lauren Garcia responded to the August 30 dispatch from Medical Center of Plano regarding a delayed outcry of sexual abuse against a child. Office Garcia talked with Nunez, who indicated her daughter had been sexually abused by Rodriguez on at least one occasion while lying on a bed. Officer Garcia contacted CPS and referred the case to Detective Luke Grant.

Detective Grant set up E.N.'s interview at the Children's Advocacy Center of Collin County. Lisa Martinez conducted E.N.'s forensic interview on September 19, 2011. She said E.N. used her body to demonstrate what happened to her.

Vanessa Lozada, a registered nurse, was the Spanish translator present during E.N.'s SANE exam on April 20, 2012. She testified to what E.N. described to her, which included Rodriguez putting his penis inside her, white things coming out, and it hurting very much.

Judy Common was the registered nurse who performed the sexual assault exam. She also testified that while gathering E.N.'s history, E.N. said Rodriguez's penis went inside her vagina. E.N. identified the vagina and penis by pointing on a body diagram. During the physical exam, Common found nothing abnormal. E.N. showed no signs of physical trauma to her hymen, vagina, or anus area, which Common explained was normal given the length of time since the alleged assault. E.N. tested negative for any STDs.

–3–

The jury heard testimony from E.N., who was seven-years-old at the time of trial. She testified Rodriguez put "his thing" in her front and in her behind, which she acknowledged was where she went "pee pee" and "poo poo." She explained that a "white thing" came out of his front, and he used a red shirt to clean her up.

The jury found Rodriguez guilty on both counts of aggravated sexual assault of a child. The trial court assessed punishment.

During the punishment hearing, Nunez testified Rodriguez was very violent and quick to anger. She said he was violent towards both her and the children. She described the July 2009 assault in which he hit her so she grabbed a knife. Although she said Rodriguez encouraged her to "go ahead and stick it in me," she refrained. She said Rodriguez hit her in the leg and face. He pleaded guilty and received one-year deferred adjudication. The period of supervision expired on December 15, 2010.

Nunez testified the June 8, 2011 assault occurred when she would not get off the phone with her sister, which angered Rodriguez. He tried to take the phone from her and hit her face. When police arrived, Rodriguez ran away but officers caught him. Rodriguez pleaded guilty to assault and evading arrest.

Rodriguez also testified during his punishment hearing. He adamantly denied E.N.'s "story." He did not deny the 2009 or 2011 assaults. However, he claimed he only hit Nunez's hand during the 2011 assault and not her face. He also admitted that after serving his jail sentence for assault and evading arrest, he was deported to Mexico. He admitted to reentering the United States illegally and spending time in a federal prison for the offense.

At the conclusion of the punishment hearing, the trial court sentenced Rodriguez to thirty years' imprisonment on each count to run concurrently. This appeal followed.

**Sufficiency of the Evidence**

In his first issue, Rodriguez challenges the sufficiency of the evidence to support his convictions because he argues neither the complainant, nor her outcry testimony, was credible. The State responds the jury was free to believe the complainant, and her testimony was sufficient to support his conviction.

The standard for determining whether the evidence is legally sufficient to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012). The jury is the exclusive judge of witness credibility and the weight to be given testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc). It is also within the exclusive province of the jury to reconcile conflicts in the evidence. *Id*.

The State was required to prove Rodriguez penetrated E.N.'s female sexual organ and anus with his sexual organ. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West Supp. 2014). The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014); *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.). The child victim's outcry statement is likewise sufficient to support conviction. *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

Rodriguez's entire argument is a challenge to E.N.'s credibility and her "story," which is uncorroborated by physical evidence. He further contends her "story" is unreliable because it was an "amalgam of at least two days of insistent questioning and re-enactment by the mother and her pre-school child."

The jury, as the exclusive judge of witness credibility, weighed the evidence and determined E.N. was credible. Her testimony that Rodriguez put "his thing" in her front and behind, is sufficient to support a conviction for aggravated sexual assault. *Revels*, 334 S.W.3d at 52.

In addition to E.N.'s testimony, the jury heard from several witnesses who talked to her. E.N. identified the vagina and penis for the SANE nurse by pointing on a body diagram. She then told the nurse Rodriguez put his penis inside her vagina. During the forensic interview, E.N. provided sensory details of how it hurt when Rodriguez's penis was inside her and she described "a white thing" that he cleaned off of her with a red shirt. The jury could infer that a four-year-old girl would not have such knowledge unless she experienced it.

Further, despite Rodriguez's arguments about the lack of any physical evidence supporting E.N.'s "story," the jury heard testimony of how common it is for a child victim of sexual assault to have a completely normal physical exam because of the body's ability to quickly heal.

Lastly, Nunez testified to E.N.'s outcry. Defense counsel thoroughly cross-examined Nunez regarding E.N.'s outcry and her questioning of E.N. over the next couple days. Nunez denied allowing E.N. to watch inappropriate movies or influencing her recollection of events. The jury was free to conclude Nunez was credible and did not influence E.N.

Viewing the evidence in the light most favorable to the prosecution, the jury could have found the essential elements of aggravated sexual assault of a child under Texas Penal Code section 22.021(a)(1)(B)(i). *Jackson*, 443 U.S. at 319 (1979); *Johnson*, 364 S.W.3d at 293–94. We overrule Rodriguez's first issue.

## Ineffective Assistance of Counsel

In his second issue, Rodriguez contends his counsel was ineffective by waiting until the punishment hearing to introduce evidence of Nunez's motive to lie about the sexual assault. He argues he was prejudiced by the omission, which would have reasonably resulted in the probability of a different outcome. The State responds Rodriguez failed to bring forth an adequate record to support his claims. Alternatively, the State argues counsel was not deficient by failing to raise these arguments because the arguments also raised damaging evidence against Rodriguez.

Rodriguez claims the outcome of the trial would have been different had the jury heard testimony regarding Nunez's general dishonesty. For example, Rodriguez's sister tried to testify about Nunez allegedly stealing $1,000 from Rodriguez's bank account while he was in jail. The State objected based on relevance, and defense counsel argued "it goes to motive." The trial court sustained the objection. Rodriguez also argues Nunez admitted to dishonesty when she testified to selling Rodriguez's truck and lawn equipment without his permission. And lastly, he contends the jury never heard any defense testimony to contradict Nunez's testimony that he acted aggressively. Rather, the trial court, for the first time during punishment, heard testimony they went "toe to toe" during their fights.

To prevail on an ineffective assistance of counsel claim, an appellant must prove by a preponderance of the evidence trial counsel's performance fell below an objective standard of reasonableness and whether there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Scott v. State*, 392 S.W.3d 684, 687 (Tex. App.—Dallas 2010, no pet.). A claim of ineffective assistance of counsel must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Scott*, 392 S.W.3d at 687.

–7–

Further, trial counsel should be afforded the opportunity to explain his actions before being denounced as ineffective. *Godspeed v. State*, 187 S.W.3d 390, 393 (Tex. Crim. App. 2005). Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.*

Here, the record is silent as to counsel's strategy for failing to present this evidence to the jury. Although Rodriguez filed a motion for new trial, he did not allege his counsel was ineffective. A hearing was not held on the motion, and he did not otherwise develop a record explaining why counsel failed to bring forth such evidence during guilt/innocence.

We will not speculate as to what counsel's strategy might have been with regard to these alleged errors. Moreover, we cannot say that counsel's failure to present the evidence of Nunez's alleged dishonesty was "so outrageous that no competent attorney would have engaged in it." *Id*. Therefore, appellant has failed to rebut the strong presumption in favor of effective assistance of counsel. Given the record before us, we cannot conclude counsel's performance was deficient. We overrule Rodriguez's second issue.

### Conclusion

The judgment of the trial court is affirmed.

Do Not Publish
TEX. R. APP. P. 47
131543F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MIGUEL ANTONIO RODRIGUEZ,
Appellant

No. 05-13-01543-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-82782-2012.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Myers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered February 4, 2015.